IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CORDOBA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>KATHLEEN L. DICKINSON et al.,<br><br>　　　　Defendant.<br>_____/ | No. CIV S-10-2944 DAD P<br><br><br><u>ORDER AND</u><br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

　　　　　Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary judgment brought on behalf of defendants Rivers and Viera pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

　　　　　Plaintiff is proceeding on an amended complaint against defendants Rivers and Viera.  According to the complaint, on July 12, 2008, plaintiff's fellow inmate J. Neri violently assaulted plaintiff at California Medical Facility ("CMF") while he was waiting for prison officials to open the Unit II West gate.  Plaintiff alleges that defendants Rivers and Viera were responsible for monitoring inmate traffic at the gate but were not present at the time of the assault

1

as required. Plaintiff alleges that as a result of the assault he had to be hospitalized for a week and suffered a concussion, black eyes, a broken nose, busted lips, and temporary damage to his left eye. In terms of relief, plaintiff requests monetary damages and injunctive relief. (Am. Compl. at 5 & Attachs.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Eighth Amendment and Failure to Protect

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain"

4

constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986). See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" Id. at 834. However, prison officials do not incur constitutional liability for every injury suffered by a prisoner at the hands of another prisoner. Id.

To prevail on such a claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Farmer, 511 U.S. at 834. In this regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety. Id.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations of defendants Rivers and Viera signed under penalty of perjury.

1   The evidence submitted by the defendants in support of their motion for summary
2 judgment establishes the following.  Defendant Rivers worked as a correctional officer with the
3 California Department of Corrections and Rehabilitation at CMF from April 2007 to December
4 2009.  Defendant Viera works as a correctional sergeant with the California Department of
5 Corrections and Rehabilitation and has worked at CMF since July 2007.  (Defs.' SUDF 1-2,
6 Rivers Decl. & Viera Decl.)

7   On July 12, 2008, defendant Viera was a correctional sergeant in the Unit II
8 Enhanced Outpatient Program ("EOP") housing unit at CMF.  His responsibilities included
9 supervising correctional officers and ensuring staff implemented procedures necessary for the
10 safety and security of the institution.  It was not defendant Viera's duty, however, to monitor or
11 cover unit gates, nor was it his duty to monitor or supervise the Unit II West gate when inmates
12 returned from the yard.  When inmates are returning to Unit II from the yard, defendant Viera's
13 post is not even near the unit gate.  (Defs.' SUDF 3-5, Viera Decl.)

14   On July 12, 2008, defendant Rivers was a Unit II Search and Escort Officer at
15 CMF.  Her duties as a Search and Escort Officer included opening the Unit II West gate when
16 inmates returned from the main yard.  When it was time for inmates to return to their housing
17 units from the yard, a West Sally Gate officer would call over the loudspeaker "yard returning."
18 At that time, inmates were to walk to their unit gates so that they could return to their housing
19 units.  Unit II inmates must walk down a hallway and then walk up a staircase to the second
20 floor, and then enter through the Unit II gate in order to enter their housing unit.  After defendant
21 Rivers heard the "yard returning" call, it was her cue to go unlock the Unit II West gate, pursuant
22 to CMF policy.  Defendant Rivers would walk from her post to the Unit II West gate to unlock
23 the door and allow Unit II inmates into their housing unit.  Usually, by the time defendant Rivers
24 arrived at the gate, inmates were halfway down the hallway.  When an officer is standing at the
25 Unit II West gate, the officer can look down and see inmates walking down the hallway and
26 coming up the stairs to the gate.  Defendant Rivers had no knowledge of any "blind spots" when

inmates return from the yard and come through the Unit II West gate. (Defs.' SUDF 6-12, Rivers Decl.)

On July 12, 2008, after defendant Rivers heard the "yard returning" call, she made her way to the Unit II West gate when an alarm sounded alerting officers that there was a fight in the Unit II stairwell. Defendant Rivers ran to the area where the fight took place to help secure the area. When she arrived, defendant Rivers saw plaintiff laying on the ground with his eyes opened in a dazed state. Medical staff were then called to come and take plaintiff off of Unit II for treatment and evaluation. There was no delay in defendant Rivers arriving at the Unit II West gate that day. (Defs.' SUDF 13-14, Rivers Decl.)

There are correctional officers present on the yard and in the hallways leading to the unit gates while inmates move from the yard to their housing units. These officers are responsible for maintaining safety, security, and control of the inmates. While defendant Rivers worked at CMF, the staircase leading to the Unit II West gate was no more dangerous than any other area of the prison where inmates are allowed to gather in mass. Even though there is constant officer presence, fights did occasionally occur in the area leading to the Unit II West gate from the main yard. (Defs.' SUDF 15-16, Rivers Decl.)

Based on defendant Rivers' experience at CMF, inmates are unpredictable and often attempt to assault one another even in the presence of officers. Constant officer presence helps to deter such assaults and aids in suppressing assaults after they occur. Further, yard staff coordinate yard release with the grill gate officers to prevent overcrowding at the gates. Prior to July 12, 2008, defendant Rivers had no knowledge of any animosity or conflict between inmate Neri and plaintiff nor did she know that inmate Neri posed a threat to plaintiff's safety. (Defs.' SUDF 17-18, Rivers Decl.)

On July 13, 2008, defendant Viera was ordered by Lieutenant Lee to investigate a possible assault or mutual combat between inmates Neri and plaintiff. During an interview with Unit II Gate Officer Cortez, Officer Cortez informed defendant Viera that on July 12, 2008, she

observed inmate Neri battering plaintiff at the Unit II gate. Defendant Viera then interviewed inmate Neri. During that interview, inmate Neri admitted to battering plaintiff. Inmate Neri told defendant Viera that he and plaintiff were playing soccer on the main yard, and plaintiff got into an argument with one of the inmate referees over a perceived "bad call." Inmate Neri stated that plaintiff continued to argue the "bad call" with other inmates as they headed to their respective housing units. Inmate Neri claimed that his patience had reached its limit with plaintiff's arguing and complaining, so he physically shoved plaintiff and caused him to hit a wall near the Unit II gate and fall to the ground. At the end of the interview, inmate Neri stated that he did not consider plaintiff an enemy, and he had just lost his temper in the situation. Finally, defendant Viera interviewed plaintiff regarding the incident. After explaining to plaintiff that inmate Neri had admitted to assaulting him, plaintiff informed defendant Viera that he did not have any problems with inmate Neri and that he did not consider inmate Neri an enemy. Prior to this investigation, defendant Viera had no knowledge of any animosity or conflict between inmate Neri and plaintiff nor did he know that inmate Neri posed a threat to plaintiff's safety. (Defs.' SUDF 19-22, Viera Decl.)

II. <u>Defendants' Arguments</u>

Defense counsel argues, <u>inter</u> <u>alia</u>, that defendants Rivers and Viera are entitled to summary judgment in their favor on plaintiff's Eighth Amendment claims because there is no evidence before the court indicating that they were deliberately indifferent to plaintiff's safety. Specifically, counsel contends that there is no evidence that the staircase leading up to the Unit II West gate posed a substantial risk of serious harm to plaintiff on July 12, 2008. Nor, according to defense counsel, is there evidence that defendants Rivers and Viera knew of and disregarded an excessive risk to plaintiff's safety. Counsel contends that neither defendant had knowledge of any animosity between inmate Neri and plaintiff. In fact, counsel argues, both inmate Neri and plaintiff stated after the altercation that they were not enemies. Finally, defense counsel argues that there is no evidence before the court suggesting that the actions of defendants Rivers and

Viera were the cause of plaintiff's injury.  Rather, counsel contends, the evidence before the court establishes that only inmate Neri's impulsive behavior caused plaintiff's injuries.  (Defs.' Mem. of P. & A. at 6-9.)

III.  Plaintiff's Opposition

In opposition to defendants' motion for summary judgment, plaintiff reiterates that on July 12, 2008, fellow inmate Neri assaulted him at the Unit II West gate during yard recall.  Plaintiff contends that the assault took place after he and the other inmates were waiting for approximately ten minutes for correctional staff to unlock the gate.  Plaintiff disputes defendant Viera's contention that he has no duty to monitor or cover unit gates because according to CMF's Operations Plan, sergeants and lieutenants are responsible for ensuring that officers are present in custody and unit corridors during mass movement for the purpose of ensuring adequate security coverage.  In addition, plaintiff contends that defendant Rivers admits that fights take place at the Unit II West gate, yet she was not at the gate at the time in question even though the yard recall announcement had been made.  In these ways, plaintiff argues that defendants Viera and Rivers failed to provide adequate coverage at the Unit II West gate on the day in question, even though they knew based on past experience, that it is a dangerous area when unsupervised during mass movement.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 1-3, Pl.'s Decl.)

IV.  Defendants' Reply

In reply, defense counsel argues that plaintiff has failed to raise a triable issue of fact.  Counsel argues that even assuming plaintiff could establish that defendants Viera and Rivers breached a duty to be at the Unit II gate or were late to arrive at the gate on the day in question, there is still no grounds for liability under § 1983 because plaintiff has not presented any evidence showing that the defendants knew of and disregarded a substantial risk to his safety.  Instead, according to defendants, plaintiff merely claims that there was not adequate coverage by correctional officers at the gate.  This, defendants contend, is not enough to raise an inference

that defendants knew that a substantial risk of serious harm to plaintiff existed.  Defense counsel repeats that there are officers on the yard and in the hallways when inmates return from the yard who are responsible for maintaining safety, security, and control of the inmates and that plaintiff does not dispute these facts.  (Defs.' Reply at 1-2.)

**ANALYSIS**

The court finds that defendants Viera and Rivers have borne the initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of protection provided to plaintiff on July 12, 2008.  Specifically, based on defendants' evidence described above, defendants Viera and Rivers did not know of or disregard any substantial risk of serious harm to plaintiff's health or safety.  Farmer, 511 U.S. at 844.  Thus, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact precluding summary judgment in defendants' favor.

The court has considered plaintiff's opposition to the pending motion for summary judgement as well as the allegations of his amended complaint.  The undersigned finds that plaintiff has failed to submit sufficient evidence to establish a legitimate dispute as to any genuine issue of material fact.  Plaintiff argues that defendants Viera and Rivers had a duty to ensure his safety and that either should have been at the gate at the time of his assault or ensured that another officer was present at the gate.  However, plaintiff has not submitted any evidence that defendants Viera and Rivers were deliberately indifferent to his health and safety on the day in question.  Specifically, plaintiff has not submitted any evidence suggesting that defendants Viera and Rivers knew or should have known that inmate Neri was going attack him.  See Farmer, 511 U.S. at 844 ("prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment"); Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (under the deliberate indifference standard a prison official must have more than a "mere suspicion" that an attack will occur).

/////

In fact, shortly after the July 12, 2008 altercation, both inmates Neri and plaintiff reported that they did not even consider each other enemies. Thus, at most, plaintiff has established that the defendants were merely negligent in their actions on the day in question. However, it is well established that mere negligence does not constitute deliberate indifference. See Farmer, 511 U.S. at 835-36 & n.4 ("deliberate indifference entails something more than mere negligence").

Under these circumstances, no reasonable fact finder could conclude that defendants Viera and Rivers knew or should have known of a substantial risk of serious harm to plaintiff and disregarded that risk. Accordingly, the court concludes that the defendants are entitled to summary judgment in their favor with respect to plaintiff's Eighth Amendment claims.[1]

**OTHER MATTERS**

Defense counsel has filed evidentiary objections to plaintiff's exhibits attached to his declaration in support of his opposition to the pending motion for summary judgment. Plaintiff has filed an motion for an extension of time to respond to defendants' objections and subsequently, filed a response to defendants' objections.

Insofar as defendants' objections are relevant to the court's disposition of the pending motion as set forth above, they are overruled. It would be an abuse of the court's discretion to refuse to consider evidence offered by a pro se plaintiff at the summary judgment stage. See, e.g., Jones v. Blanas, 393 F.3d 918, 935 (9th Cir. 2004) (remanding with instructions to consider evidence offered by the pro se plaintiff in his objections to the findings and recommendations). As to plaintiff's motion for an extension of time to file a response to

---

[1] Defense counsel also argues that the defendants are entitled to summary judgment based on qualified immunity and because there is no respondeat superior liability under § 1983. In light of the court's recommendation that defendants' motion for summary judgment be granted on the merits of plaintiff's Eighth Amendment claim, the court declines to address defendants' alternative arguments.

defendants' objections, as noted above, the court will overrule defendants' objections. Accordingly, the court will deny plaintiff's motion as unnecessary and as having been rendered moot in light of the findings and recommendations herein.

## CONCLUSION

IT IS HEREBY ORDERED that:

1. Defendants' objections (Doc. No. 38) are overruled;

2. Plaintiff's motion for an extension of time (Doc. No. 40) is denied as unnecessary and moot; and

3. The Clerk of the Court is directed to randomly assign a United States District Judge to this action.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Doc. No. 35) be granted; and

2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 17, 2012.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
cord2944.57